**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

United States of America,

Plaintiff,

v.

Marlon Moore,

Defendant.

No. CV-15-01480–PHX-DGC (JZB)

(No. CR-12-01335- PHX-DGC)

**REPORT AND RECOMMENDATION**

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT JUDGE:

Defendant Marlon Moore has filed a *pro se* Amended Motion to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody pursuant to 28 U.S.C. § 2255, seeking to vacate or set aside a sentence imposed by the Court. (Doc. 8.)[1]

## I. SUMMARY OF CONCLUSION

Petitioner's claim that counsel failed to assert that the government threatened a witness prior to an evidentiary hearing is meritless. Counsel identified the implied threat and argued (unsuccessfully) that the government acted to prevent the witness from testifying at the hearing. Petitioner's argument that counsel should have raised a confrontation argument regarding a confidential informant is also meritless. Petitioner's final argument regarding a Miranda violation is procedurally defaulted because Petitioner

[1] Citations to "Doc." are to the docket in CV-15-01480-PHX. Citations to "CR Doc." are to the docket in the underlying criminal case, CR-12-01335-PHX.

did not raise the issue on direct appeal. The Court therefore recommends the Amended Petition be denied without an evidentiary hearing.

## II. PROCEDURAL HISTORY

On July 17, 2012, an Indictment charged Petitioner with the offense of Possession of Marijuana with Intent to Distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D). (CR Doc. 2.) On August 26, 2013, the Court sentenced Petitioner to 46 months of imprisonment followed by three years of supervised release. (CR Doc. 81.)[2] On October 23, 2014, the Ninth Circuit Court of Appeals affirmed Defendant's conviction and sentence. *United States v. Moore*, 770 F.3d 809, 812 (9th Cir. 2014).

The Ninth Circuit Court of Appeals summarized the facts of the case as follows:

> In January of 2012, Moore was living in a house in Laveen, Arizona, with his fiancée Kristen Jones, their nine-month old daughter, and three more of Jones' children (ages nine, four, and three). Moore worked in construction, ran a taxi business, and was the primary caretaker of the children.
>
> The Department of Homeland Security had been tracking Moore since the fall of 2011 as a suspect in a marijuana distribution ring. On January 18, 2012, DHS started conducting surveillance on Moore's residence based on a tip from a confidential informant that a large quantity of marijuana had been delivered there. At 6:00 a.m. the next day, DHS Special Agent Scott Wagoner continued the surveillance. He was joined an hour later by nine other federal law enforcement officials and two local law enforcement officials. At approximately 8:04 a.m., the officers watched as Jones left the house and drove off in a Ford Crown Victoria. At approximately noon, Moore exited the house, opened the garage door, pulled a Honda Accord into the garage, and closed the garage door.
>
> A couple of hours later, around 2:00 p.m., some of the officers knocked on the door of the house and rang the doorbell. They heard people inside, children crying, and "shuffling around," but no one came to the door. After a few minutes, the officers returned to their cars. At this point, Wagoner decided to go back to his office to start working on an affidavit in support of an application for a search warrant. During that time, however, his supervisor suggested that Wagoner try calling the phone number that was listed on a taxi cab that had been parked in front of the home all day.
>
> Wagoner dialed that number at 7:07 p.m., and Jones answered. Agent Wagoner identified himself, explained that the house was under surveillance for possible drug trafficking, and that he was "in the middle of writing a search warrant." Jones said that her three children, her sister, and possibly "her boyfriend Marlon [Moore]" were at the house. Wagoner later

[2] On November 1, 2015, the Court reduced Petitioner's sentence to 37 months of imprisonment, pursuant to 18 U.S.C. § 3582(c)(2), in accordance with a retroactive amendment to the United States Sentencing Guidelines. (CR Doc. 106.)

testified that Jones "seemed deeply concerned for her kids being in the house and the fact that the search warrant was going to happen." Jones told Wagoner that she would leave work and asked him to meet her at the house.

Soon thereafter, at 7:44 p.m., Jones called her sister, who was in the house. One minute later, the officers watching the house saw a person run through the backyard, from the house to the edge of the yard, and heard a loud sound consistent with something or someone coming over the fence and landing on the ground in the adjacent backyard. The officers were concerned that someone had fled the house and thus increased the law enforcement presence, including bringing in a helicopter. At the location where the officers heard the sound, they found two large boxes, each of which contained a 20–pound bundle of marijuana wrapped in green cellophane and surrounded by pink foam.

Wagoner returned to the scene and called Jones at 8:26 p.m. Jones told him she was on her way there. She arrived around 8:40 p.m. After a short conversation regarding the situation, Jones signed a Consent to Search form at 8:45 p.m.

Jones and some officers then went to the front door of the residence. When she arrived at the front door, Jones called her sister and Moore, but neither answered their respective phone. Jones then attempted to unlock the door with her keys, but she could not do so because the door had been locked with a dead-bolt that could not be unlocked from the outside. Jones continued to knock on the door and then called out—in a voice that "was very, very loud" and "definitely could be heard from inside"—"Marlon, Nikki, the police are out here, open the door, open the door." When still no one answered the door, the officers requested permission from Jones to break through the front door with a battering ram. Jones consented to the use of the ram.

The officers used the ram to open the door. Jones then called out again, and Moore, Jones' sister, the children, and another man came out of the house. Once they were inside the house, the officers found three boxes of marijuana that were identical to the two that had been found in the backyard of the neighboring house, along with digital scales, packing material, and shrinkwrap. Following Miranda warnings, Moore admitted that the marijuana was his and gave details as to his sources and his shipping methods.

The government indicted Moore, charging him with possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D).

…

A jury found Moore guilty of count one of the indictment, which charged him with possession of marijuana with intent to distribute.

*Moore*, 770 F.3d at 811-812.[3]

## III. MOTION TO VACATE OR SET ASIDE SENTENCE

### A. Petitioner's Claims

On October 21, 2015, Petitioner mailed the instant, timely, Amended Motion to Vacate, which advances three grounds for relief:

> **Ground 1**: Counsel was ineffective for failing to assert that the prosecutor threatened witness Jones that if she testified at trial, then she would be arrested and her children placed in the custody of child protective services.
>
> **Ground 2**: Counsel was ineffective "for failing to raise a confrontation issue" regarding a confidential informant.
>
> **Ground 3:** The case agent violated Defendant's Fifth Amendment rights when Defendant "requested an attorney" during interrogation but the agent told Defendant "it was too late" and continued questioning.

(Doc. 8.) On October 28, 2015, the Government filed a Response. (Doc. 9.) On November 12, 2015, Petitioner filed a Reply (Doc. 11).

On April 27, 2016, the Court directed Petitioner's counsel and Petitioner to file any additional evidence related to Ground One. (Doc. 14.) On May 3, 2016, Petitioner's counsel filed an affidavit stating that counsel raised the issue with the District Court. (Doc. 15-1 at 1.)[4] On May 11, 2016, Petitioner filed an affidavit stating that he was told by counsel and witness Jones that witness Jones was threatened with arrest and the loss of her children if she testified. (Doc. 17 at 2.)

### B. Analysis

#### 1. Ground One

Defendant asserts "counsel was ineffective for failing to disclose" to the Court that "Ms. Jones was threatened by the prosecutor not to testify [on] behalf of Mr. Moore,

---

[3] The facts are also documented in the Court's Order regarding Defendant's Motion to Suppress. (CR Doc. 48.)

[4] Petitioner's Counsel also filed a Notice of Potential Conflict (Doc. 16), noting that Petitioner was indicted in CR-12-1335 on July 17, 2012, and "the [C]ourt may wish to consider this as a potential conflict." This Court has reviewed the case history of the criminal case and determined that this Court does not have a conflict in issuing this Report and Recommendation.

which should have been prosecutorial misconduct." (Doc. 8 at 5.) Defendant "contends that Ms. Jones counselor told her that the prosecutor said that if she testified for Mr. Moore, she would be arrested and her children taken into child services." (*Id.*) In his Reply, Defendant asserts the "government clearly caused Ms. Jones to invoke her Fifth Amendment rights [due] to the fact of the retribution she would face if testifying in Mr. Moore defense." (Doc. 11 at 2.)

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim, Petitioner must show: (1) deficient performance-counsel's representation fell below the objective standard for reasonableness; and (2) prejudice—there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687–88. Although a petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id.* at 697. Petitioner bears the burden of affirmatively showing counsel's conduct was "outside the wide range of professionally competent assistance, and that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687–90. Petitioner must overcome a strong presumption that his counsel's representation was within a wide range of reasonable professional assistance. *See United States v. Ferreira–Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1996).

Contrary to Petitioner's claim, Petitioner's counsel disclosed to the Court the potential threat to witness Jones. Petitioner's counsel filed a motion requesting immunity for witness Jones at a suppression hearing. (CR Doc. 40.) Counsel requested immunity because the government informed counsel that incriminating questions would be asked of

Ms. Jones during the hearing.[5] During argument, Petitioner's counsel argued that immunity should be compelled because the government had, in effect, threatened witness Jones with the prospect of criminal charges if she provided incriminating testimony. Petitioner's counsel claimed that "the government's actions were a distortion and – I don't want to use misconduct, but its actions were with the purpose of preventing Ms. Jones from not testifying." (CR Doc. 51 at 12.) Counsel and the Court were aware that Ms. Jones faced the prospect/threat of criminal charges resulting in arrest, incarceration, and the potential loss of child custody if she presented incriminating testimony during the hearing. As the Court noted, "[c]ounsel for Ms. Jones was appointed actually at the suggestion of defense counsel, which I think was a well-founded suggestion because she's an important witness and she was involved in the events at issue in the case." (CR Doc. 51 at 28.)[6] Petitioner's claim is meritless because Petitioner's counsel argued the threat issue when requesting immunity for witness Jones.

**2. Ground Two**

Petitioner argues "counsel was ineffective for failing to raise a confrontation issue to allow him to cross examine the case agent" regarding statements made by the confidential informant. (Doc. 8 at 6.) Petitioner argues that the confrontation argument would have allowed Petitioner to "subpoena the informant" who was in custody at the

---

[5] Petitioner's counsel told the Court: "the government, in looking at the phone records, indicated that Ms. Jones may have some -- may have some exposure and that she could say things that the government would find incriminating as to her knowledge, I'm assuming, of the drugs in the house and the phone calls to her sister, who was in the house." (CR Doc. 51 at 8.) Mr. Mitchell, counsel for Jones, previously told the Court: "I am concerned that once she takes the stand it is going to become clear that the timing of her phone call in compared with the timing of the dumping of the drugs and timing of the surveillance, and now knowing physically large amounts of marijuana were in her home while she was in her home, is going to become clear." (CR Doc. 91 at 6.)

[6] The Court also found no misconduct in the case. "In fact, I think, given the nature of the phone records, the government was acting in good faith in advising Ms. Jones' counsel that those records exist and that that may well be a subject of cross-examination at this hearing. All of this leads me to conclude that there is nothing in the facts of this case approaching prosecutorial misconduct. I have no reason to believe that the government's call to Mr. Mitchell was anything other than an effort to make sure he knew about genuinely potentially incriminating information that was disclosed in the case prior to the call." (CR Doc. 51 at 29-30.)

time. (*Id.*) Petitioner argues he could have determined "if there was a confidential informant at all." (*Id.*)

On January 23, 2013, the government called Agent Scott Wagoner to testify at an evidentiary hearing regarding a motion to suppress. The agent was asked why he began surveillance at Petitioner's address. The agent testified: "On the evening of January 18th, I received some information that approximately 100 pounds of marijuana was received by Marlon Moore. Or I should say not by name, but by -- I was told it was a black male of Jamaican descent." (CR Doc. 51 at 41.) The government did not introduce statements from the informant, and made no other reference to the informant on direct examination. Petitioner's counsel cross-examined the agent regarding the reliability of the confidential informant (CR Doc. 51 at 78), the informant's "criminal record" (*id.* at 79), and the informant's source of information (*id.* at 84). When the government objected to the relevance of continuing questions regarding the informant, the Court stated:

> I don't think there was anything said on direct examination about a confidential source. I think he did say he received information on January 18th about 100 pounds being delivered to a black Jamaican. It seems to me that the reliability of this source or the details of the source really aren't relevant. I mean, it's not disputed they were at the house conducting surveillance. What led them to be there, it seems to me, is not relevant, it's what happened after they started the surveillance that is relevant, so I'm going to sustain the objection.

(CR Doc. 51 at 85.)

Counsel was not ineffective for failing to "raise a confrontation issue" for the purpose of identifying the informant or calling the informant as a witness. The informant was not a witness at the evidentiary hearing, and no statements of the informant were introduced. *See Crawford v. Washington*, 541 U.S. 36, 51 (2004) (the Confrontation Clause "applies to 'witnesses' against the accused"). The reference to the informant explained why the agents were present at Petitioner's address, which did not implicate Petitioner's right to confrontation. *See United States v. Wahchumwah*, 710 F.3d 862, 871 (9th Cir. 2012) (finding no Confrontation Clause violation because "anonymous

complaints were not offered to prove that Wahchumwah was selling eagle parts, but merely to explain why the federal agents began investigating him"). Counsel was not ineffective because there was no confrontation issue for counsel to present. *See Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.").

**3. Ground Three**

Petitioner argues the government violated his "Fifth Amendment Miranda rights when he requested an attorney, but was told that it was too late to call one." (Doc. 8 at 7.) Prior to trial, Petitioner filed a motion alleging "[i]t is not clear that Mr. Moore fully understood his Miranda rights, or gave an unambiguous waiver." (CR Doc. 21 at 2.) The Court found that "Defendant never asked to stop talking and never requested an attorney." (CR Doc. 48 at 11.) The Court concluded that "[c]onsidering the totality of the circumstances, the Court finds by a preponderance of the evidence that Defendant's waiver of his Miranda rights was voluntary, knowing, and intelligent." (*Id*. at 13.)

Petitioner did not bring this claim in his direct appeal, and he is procedurally barred from raising it for the first time in a § 2255 proceeding. *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) (stating that a "§ 2255 Petitioner procedurally defaults his claims by not raising them on direct appeal"). Petitioner can overcome procedural default by a showing of either cause and actual prejudice, *see United States v. Frady*, 456 U.S. 152, 167-68 (1982), or actual innocence, *see Bousley v. United States*, 523 U.S. 614 (1998).

Petitioner acknowledges his counsel failed to present this issue, and he offers no cause or prejudice to excuse his default. Petitioner presents no evidence of actual innocence. *See Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (en banc) (holding that a prisoner's freestanding innocence claim must "affirmatively prove that he is probably innocent"). Instead, the evidence demonstrates Petitioner "admitted that the marijuana was his and gave details as to his sources and his shipping methods." *Moore*, 770 F.3d at 812.

**4. Batson Claim**

In his Reply, Petitioner asks the Court to consider whether the *Batson* claim denied in his direct appeal should be reconsidered under *Crittenden v. Chappell*, 804 F.3d 998, 1006 (9th Cir. 2015) (holding "*Teague* [*v. Lane*, 489 U.S. 288 (1989)] did not prohibit the district court from applying the standard articulated in *Cook* [*v. LaMarque*, 593 F.3d 810 (9th Cir. 2010)]).[7] (Doc. 11 at 3.) Previously, the District Court found that the government's peremptory strike of a Hispanic juror for "putting his head on the bench and appearing not to pay attention" was non-discriminatory. *United States v. Moore*, 592 F. App'x 544, 546-547 (9th Cir. 2014) (unpublished). The Ninth Circuit found this determination of credibility and demeanor was not clearly erroneous. (*Id.*) Here, the Court's demeanor determination is not implicated by *Crittenden* because Petitioner offers no other evidence of discriminatory intent.

**5. Evidentiary Hearing**

Petitioner is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 (b). Here, the Court sought additional documentation regarding Petitioner's claim. *Williams v. Woodford*, 306 F.3d 665, 688 (9th Cir. 2002) ("[A] district court in a habeas proceeding 'need not conduct full evidentiary hearings,' but may instead 'expand the record . . . with discovery and documentary evidence.'") (*quoting Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988) (per curiam)). For Ground One, Petitioner and his counsel submitted supplemental affidavits to the Court documenting the conduct of the prosecutor toward witness Jones. (Docs. 15, 17.) As discussed above, Petitioner's counsel identified Petitioner's "threat" issue and argued that the government's "actions were with the purpose of preventing Ms. Jones from not testifying." (CR Doc. 51 at 12.) Ground Two is also meritless, and Ground Three is procedurally defaulted. The record conclusively demonstrates Petitioner is not entitled to

---

[7] *Cook v. LaMarque*, 593 F.3d 810, 815 (9th Cir. 2010) (a peremptory challenge violates the Equal Protection Clause if it is motivated in substantial part by discriminatory intent).

relief, and the motion for an evidentiary hearing should be denied. *See United States v. Mejia–Mesa*, 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the Petitioner is not entitled to relief").

Accordingly,

**IT IS RECOMMENDED** that Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody pursuant to 28 U.S.C. § 2255 (Doc. 8) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because denial of the Motion is justified by a plain procedural bar and reasonable jurists would not find the ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the

///

///

///

///

findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 17th day of May, 2016.

Honorable John Z. Boyle
United States Magistrate Judge